David A. Foraker, OSB #812280
Sanford R. Landress, OSB #814382
Conde T. Cox, OSB #090977
Greene & Markley, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, OR  97201
Telephone:  (503) 295-2668
Facsimile:   (503) 224-8434
E-mail: david.foraker@greenemarkley.com
E-mail: sanford.landress@greenemarkley.com
E-mail: conde.cox@greenemarkley.com

      Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. 08-32798-tmb11 |
| | ) |
| Matrix Development Corporation, | ) Chapter 11 |
| an Oregon corporation, aka Legend Homes, | ) |
| | ) DEBTOR'S SECOND AMENDED |
| Debtor. | ) AND RESTATED PLAN OF |
| | ) REORGANIZATION, AS FINALLY |
| | ) MODIFIED |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

Page

I.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.1   Defined Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.2   Other Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.3   Interpretation; Application of Definitions; and Rules of Construction . . . . 1

II.  TREATMENT OF UNCLASSIFIED ADMINISTRATIVE
     EXPENSES CLAIMS AND PRIORITY TAX CLAIMS . . . . . . . . . . . . . . . . . . 2
    2.1   Administrative Expense Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.2   Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. CLASSIFICATION AND TREATMENT OF
     CLAIMS AND EQUITY INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    3.1   Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        a.   Class 1: Abandoned Property Secured Claims . . . . . . . . . . . . . . . . 3
        b.   Class 2: Bank of America's Secured Claim  . . . . . . . . . . . . . . . . . 3
        c.   Class 3: Columbia State Bank's Secured Claim  . . . . . . . . . . . . . . 3
        d.   Class 4: Construction Lien Claims  . . . . . . . . . . . . . . . . . . . . . . . . 3
        e.   Class 5: First Independent Bank's Secured Claim. . . . . . . . . . . . . 3
        f.   Class 6:  JP Morgan Chase Bank's Secured Claim . . . . . . . . . . . 4
        g.   Class 7:  KeyBank's Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        h.   Class 8: Dennis Pahlisch's Secured Claim  . . . . . . . . . . . . . . . . . 4
        i.   Class 9: PMSI Equipment Secured Claims  . . . . . . . . . . . . . . . . . 4
        j.   Class 10:  Property Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        k.   Class 11: Wachovia's Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        l.   Class 12: Priority Employee-Related Claims  . . . . . . . . . . . . . . . 4
        m.   Class 13: Priority Consumer Deposit Claims  . . . . . . . . . . . . . . . 4
        n.   Class 14: Customer Home Warranty Claims  . . . . . . . . . . . . . . . 5
        o.   Class 15: Director and Officer Indemnity Claims . . . . . . . . . . . . 5
        p.   Class 16: Surety Bond Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        q.   Class 17: Contractor Unsecured Claims  . . . . . . . . . . . . . . . . . . . 5
        r.   Class 18: Convenience Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        s.   Class 19: Other Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        t.   Class 20: Equity Interests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.2   Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        a.   Class 1: Abandoned Property Secured Claim . . . . . . . . . . . . . . . 6
        b.   Class 2: Bank of America's Secured Claim  . . . . . . . . . . . . . . . . 7
        c.   Class 3: Columbia State Bank's Secured Claim . . . . . . . . . . . . . 10
        d.   Class 4: Construction Lien Claims  . . . . . . . . . . . . . . . . . . . . . . 13
        e.   Class 5: First Independent Bank's Secured Claim. . . . . . . . . . . 13
        f.   Class 6:  JP Morgan Chase Bank's Secured Claim . . . . . . . . . . 14
        g.   Class 7:  KeyBank's Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        h.   Class 8: Dennis Pahlisch's Secured Claim . . . . . . . . . . . . . . . . 22
        i.   Class 9: PMSI Equipment Secured Claims . . . . . . . . . . . . . . . . 23
        j.   Class 10:  Property Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . 23
        k.   Class 11: Wachovia's Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        l.   Class 12: Priority Employee-Related Claims  . . . . . . . . . . . . . . 26
        m.   Class 13: Priority Consumer Deposit Claims  . . . . . . . . . . . . . . 26

|  | n. | Class 14: Customer Home Warranty Claims | 26 |
|  | o. | Class 15: Director and Officer Indemnity Claims | 27 |
|  | p. | Class 16: Surety Bond Claims | 27 |
|  | q. | Class 17: Contractor Unsecured Claims | 27 |
|  | r. | Class 18: Convenience Claims | 27 |
|  | s. | Class 19: Other Claims | 27 |
|  | t. | Class 20: Equity Interests | 29 |

IV. MEANS FOR THE IMPLEMENTATION OF THE PLAN ... 29
4.1 Effective Date Transactions ... 29
4.2 Plan Funding ... 30
4.3 Ownership and Corporate Governance of Reorganized Debtor ... 30
4.4 Continuation of Business Operations ... 30
4.5 Performance of Plan Obligations by Reorganized Debtor ... 30
4.6 Continuation of Creditors' Committee ... 31

V. PROVISIONS GOVERNING DISTRIBUTIONS AND THE RESOLUTION OF DISPUTED AND CONTINGENT CLAIMS ... 31
5.1 Timing of Distributions ... 31
5.2 No Postpetition Interest ... 31
5.3 Form of Payment ... 31
5.4 Withholding and Reporting Requirements ... 32
5.5 No Obligation to Make Cash Payments of $10 or Less on Account of Allowed Claims ... 32
5.6 Disputed Distributions ... 32
5.7 Undeliverable or Unclaimed Distributions ... 32
5.8 Time Bar to Cashing Distribution Checks ... 33
5.9 Reserve Fund ... 33
    a. Reserve for Disputed and Contingent Claims. ... 34
    b. Reserved Amounts and Estimations. ... 34
    c. Distributions From Reserve Fund. ... 34
5.10 Transmittal of Distributions and Notices ... 35
5.11 Prosecution of Objections to Claims ... 35
5.12 Limitations on Filing or Amending Claims After the Confirmation Date ... 36
5.13 No Distributions Pending Allowance ... 36

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 36
6.1 General Assumption of Executory Contracts and Unexpired Leases ... 36
6.2 Cure of Assumed Contracts and Leases ... 37

VII. CONDITIONS PRECEDENT TO EFFECTIVE DATE ... 37
7.1 Conditions to Effective Date ... 37
7.2 Waiver of Conditions ... 38
7.3 Notice of Effective Date. ... 38

VIII. EFFECTS OF PLAN CONFIRMATION ... 39
8.1 Binding Effect ... 39
8.2 Vesting of Estate Property ... 39

| | | |
|---|---|---|
| 8.3 | Discharge | 39 |
| 8.4 | Exculpation | 40 |
| 8.5 | Effect on Insurance Policies | 40 |
| IX. | ADMINISTRATIVE PROVISIONS | 41 |
| 9.1 | Retention of Jurisdiction | 41 |
| 9.2 | Election Pursuant to Section 1129(b) of the Bankruptcy Code | 43 |
| 9.3 | Consummation of the Plan | 44 |
| 9.4 | Modification of the Plan | 44 |
| 9.5 | Exemption from Transfer Taxes | 44 |
| 9.6 | Waivers | 44 |
| 9.7 | Setoffs, Recoupments and Defenses | 45 |
| 9.8 | Retention and Enforcement of Causes of Action | 45 |
| 9.9 | Cancellation of Documents Evidencing Unsecured Claims | 46 |
| 9.10 | Payment of United States Trustee Fees | 46 |
| 9.11 | Reorganized Debtor's Professional Expenses | 47 |
| 9.12 | No Retiree Benefits. | 47 |
| 9.13 | Closing of the Chapter 11 Case | 47 |
| 9.14 | Compromise of Controversies. | 47 |
| 9.15 | Withdrawal or Revocation of the Plan | 48 |
| 9.16 | Failure of Effective Date | 48 |
| 9.17 | Default | 48 |
| 9.18 | Governing Law | 48 |
| 9.19 | Computation of Time Periods. | 49 |
| 9.20 | Reservation of Rights | 49 |
| 9.21 | Severability | 49 |
| 9.22 | Plan Controls. | 49 |
| 9.23 | Successors and Assigns | 49 |
| 9.24 | Exhibits | 49 |
| 9.25 | Notices to Reorganized Debtor | 50 |

Appendix A--DEFINITIONS

Matrix Development Corporation, an Oregon corporation, proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## I.

## DEFINITIONS

1.1    <u>Defined Terms</u>.  Definitions of certain terms used in this Plan are set forth in the attached <u>Appendix A</u>.  Other terms are defined in the text of this Plan.  In either case, when a defined term is used, the first letter of each word in the defined term is capitalized.

1.2    <u>Other Terms</u>.  Terms used and not defined in this Plan that are defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules, as applicable.

1.3    <u>Interpretation; Application of Definitions; and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. For purposes of the Plan:  (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; and (c) unless otherwise specified, all references in the Plan to Sections and Exhibits are references to Sections and Exhibits of or to the Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar meaning refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan.  The rules of construction contained in section

Page 1 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

102 of the Bankruptcy Code shall apply to the construction of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.  Unless otherwise indicated herein, all references to dollars means United States dollars.

## II.

### TREATMENT OF UNCLASSIFIED ADMINISTRATIVE EXPENSES CLAIMS AND PRIORITY TAX CLAIMS

2.1    <u>Administrative Expense Claims</u>.  Administrative Expense Claims shall be paid by the Reorganized Debtor, in each case, (a) in full, in Cash, on the later of (i) the Effective Date, (ii) when due (in the case of Claims that arise or accrue in the ordinary course of the Debtor's business after the Petition Date and which become due after the Effective Date), or (iii) upon entry of a Final Order if Court approval is a precondition to payment, or (b) as may be agreed upon between the holder and the Reorganized Debtor.

2.2    <u>Priority Tax Claims</u>.  Priority Tax Claims shall be paid by the Reorganized Debtor, in each case, in full, in Cash, on the Effective Date or as soon thereafter as the Allowed Amount is determined.

## III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1    <u>Classification</u>.  All Claims except Administrative Expense Claims and Priority Tax Claims and all Equity Interests are placed in the following Classes for all purposes.  A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim falls within the description of such other Classes.  A Claim is in a particular Class only to the extent that the Claim has not been paid, released or otherwise

Page 2 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

satisfied prior to the Effective Date.

 a. Class 1:  Abandoned Property Secured Claims.  Class 1 consists of all Claims that are secured by liens on Abandoned Property, in each case, to the extent of the holder's interest in such Collateral.

 b. Class 2:  Bank of America's Secured Claim.  Class 2 consists of the Allowed Secured Claim of Bank of America that is secured by liens on the Retained Project in Hillsboro, Oregon known as Village at Orenco and the cash collateral thereof.

 c. Class 3:  Columbia State Bank's Secured Claim.  Class 3 consists of the Allowed Secured Claim of Columbia State Bank, as successor to Columbia River Bank, that is secured by liens on the Retained Project in Tigard, Oregon known as Walnut Creek and the cash collateral thereof.

 d. Class 4:  Construction Lien Claims.  Class 4 consists of all Allowed Claims that are secured by statutory liens under Oregon's Construction Lien Law (i.e., ORS 87.001 to 87.060 and 87.075 to 87.093) on the Retained Projects or by replacement liens on cash proceeds of the Debtor's real property pursuant to Court orders, in each case, to the extent such lien (i) is valid and enforceable under applicable law and under the provisions of the Court's Administrative Order Establishing Procedures for the Resolution and Payment of Prepetition Construction Lien Claims entered on July 23, 2008, as Document #317, and (ii) has priority over the trust deed lien of the Lender on such Collateral.  Each such Claim shall be deemed placed in a separate subclass for Plan voting purposes.

 e. Class 5:  First Independent Bank's Secured Claim.  Class 5 consists of the Allowed Secured Claim of First Independent Bank to the extent it is secured by a lien on the cash proceeds of Lots 1, 2, 9 and 59 in the subdivision in Tualatin, Oregon known as Victoria Gardens.

Page 3 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED
\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

f.      Class 6:   JP Morgan Chase Bank's Secured Claim.  Class 6 consists of the Allowed Secured Claim of JPMorgan Chase Bank that is secured by liens on the Retained Project in Corvallis, Oregon known as Willamette Landing Phases 6 and 7 and the cash collateral thereof.

g.      Class 7:   KeyBank's Claims.  Class 7 consists of all Claims of KeyBank, N.A. that do not fall within the description of Class 1.

h.      Class 8:  Dennis Pahlisch's Secured Claim.  Class 8 consists of the Allowed Secured Claim of Dennis Pahlisch (or, if applicable, of Dennis Pahlisch and JD Investitures LLC) that is secured by a lien on the Retained Project in Corvallis, Oregon which is planned for development as a subdivision to be known as Pawers.

i.      Class 9:  PMSI Equipment Secured Claims.  Class 9 consists of all Allowed Secured Claims that, in each case, is secured by a purchase money security interest in equipment of the Debtor that is not surrendered to the holder of such Claim prior to the Confirmation Date.

j.      Class 10:   Property Tax Claims.  Class 10 consists of all Claims of governmental units for ad valorem property taxes or similar impositions that are secured by statutory liens on the Retained Projects, in each case, to the extent such lien (i) is valid and enforceable under applicable law, and (ii) has priority over the trust deed lien, if any, on such Collateral.

k.      Class 11:  Wachovia's Claims.  Class 11 consists of all Claims of Wachovia that do not fall within the description of Class 1.

l.      Class 12:  Priority Employee-Related Claims.  Class 12 consists of all Allowed Unsecured Claims of the kind specified in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

m.      Class 13:  Priority Consumer Deposit Claims.  Class 13 consists of

Page 4 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

all Allowed Unsecured Claims of the kind specified in section 507(a)(7) of the Bankruptcy Code (i.e., those of individuals, to the extent of $2,425 for each such individual, that, in each case, arose from the deposit of money in connection with the purchase of property or services from the Debtor, for the personal, family, or household use of such individual, that were not delivered or provided by the Debtor).

n.      Class 14:  Customer Home Warranty Claims.  Class 14 consists of all Allowed Unsecured Claims of Homeowners, to the extent of $5,000 for the owners of any one Home, that, in each case, arose or arises under and is covered by the terms of a written warranty agreement with the Debtor.

o.      Class 15:  Director and Officer Indemnity Claims.  Class 15 consists of all Claims of directors and officers of the Debtor, to the extent of $100,000 (or such greater amount as may be authorized by the Reorganized Debtor's board of directors or shareholders) for each such individual, for indemnification under ORS 60.387 to 60.414 that are not covered by insurance.

p.      Class 16:  Surety Bond Claims.  Class 16 consists of all Claims of sureties that, in each case, arose or arises under a surety, maintenance or performance bond with respect to a Retained Project.

q.      Class 17:  Contractor Unsecured Claims.  Class 17 consists of all Allowed Unsecured Claims that, in each case, (i) arose from performing labor or transporting or furnishing materials or supplies at one of the Debtor's project sites, (ii) has not been assigned other than for purposes of security or of collecting the Claim, and (iii) is not secured by a lien on any property (whether owned by the Debtor or other entity); provided, however, that if an entity is subrogated to the rights of a holder of a Claim of the kind specified in this Section 3.1(q), the Claim shall be classified and treated as a Class 19 Claim.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

r.      <u>Class 18: Convenience Claims</u>.  Class 18 consists of all Allowed Unsecured Claims that do not fall within the descriptions of Classes 12, 13, 14, 15, 16 or 17 and that, in each case, is for an Allowed Amount of $2,000 or less or, if for an Allowed Amount greater than $2,000, the holder thereof irrevocably elects to reduce the Allowed Amount of such Claim to $2,000.

s.      <u>Class 19: Other Claims</u>.  Class 19 consists of all Claims not otherwise classified or treated under this Plan.

t.      <u>Class 20:  Equity Interests</u>.  Class 20 consists of all Equity Interests outstanding as of the Effective Date.

3.2    <u>Treatment</u>.  The Classes of Claims and Equity Interests shall receive the treatment described herein, which treatment shall be in full and complete satisfaction, settlement and release of, and in exchange for, all such Claims and Equity Interests. Following entry of the Confirmation Order (but subject to the occurrence of the Effective Date), the rights of all Creditors and Shareholders shall be limited exclusively to the specific benefits made available and set forth in the Plan.

a.      <u>Class 1:  Abandoned Property Secured Claims</u>.  Class 1 is not impaired by the Plan, and the holders of the Class 1 Claims are not entitled to vote on the Plan.  All legal, equitable and contractual rights of the holders of the Class 1 Claims with respect to Abandoned Property shall remain unaltered by this Plan and such holders may exercise all rights and remedies available to them under applicable nonbankruptcy law with regard to such property.  Notwithstanding Section 8.2 of the Plan, the Reorganized Debtor shall have the right and power to convey any or all of the Abandoned Property in lieu of foreclosure of liens securing the Lenders' Claims, in each case as though the Reorganized Debtor were the Debtor before the Effective Date, without any need for Court approval.  The funds in the blocked DIP accounts for the projects relating to

Page 6 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

Abandoned Property shall be administered by the Reorganized Debtor after the Effective Date, in each case in accordance with the terms of the Court orders governing such funds as though the Reorganized Debtor were the Debtor, and the Court shall retain jurisdiction over all matters concerning the administration and distribution of such funds; provided, however, that except to the extent that the funds in such blocked accounts are required to be reserved for the benefit of entities that hold Claims that are secured by replacement liens on such funds pursuant to Court orders, the Reorganized Debtor shall distribute the funds in such blocked accounts to the Lenders that have an interest in such funds as soon as is practicable after the Effective Date.

b.    <u>Class 2:  Bank of America's Secured Claim</u>.  Class 2 is impaired by the Plan, and the holder of the Class 2 Claim is entitled to vote on the Plan.  The Class 2 Claim shall receive the treatment described in this paragraph.

(i)  The Allowed Amount of the Class 2 Claim shall be the amount equal to the excess of $5,585,000 over the sum of all payments made by the Debtor on account of such Claim during the period October 6, 2009, through (but not including) the Effective Date.  The election made by the holder of the Class 2 Claim under section 1111(b)(2) of the Bankruptcy Code shall be deemed revoked for the purposes of this Plan.

(ii)  On the Effective Date, the Reorganized Debtor shall execute and deliver the Amended Loan Documents to the holder of the Class 2 Claim.  The original principal amount of the replacement promissory note (the "<u>Class 2 Note</u>") will be the Allowed Amount of the Class 2 Claim on the Effective Date.

(iii)  Except as otherwise provided in the Amended Loan Documents, the Reorganized Debtor shall pay to the holder of the Class 2 Note (A) on the first Business Day of each month, commencing on the first Business Day following

Page 7 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

the month in which the Effective Date falls, the amount of interest that accrues on the unpaid principal balance of the note at the Lender Interest Rate through the last day of the month immediately preceding the month in which such payment is due, (B) a principal amount equal to the applicable Lot Release Amount at the closing of each sale of a Home in Village at Orenco, and (C) on or before the third anniversary of the Effective Date, the entire unpaid balance of principal and interest owing under the Class 2 Note on such date; provided, however, that the total amount of principal payments on the Class 2 Note shall be no less than $1,040,000 during the period beginning on the Effective Date and ending on the first anniversary thereof and no less than $2,690,000 during the period beginning on the Effective Date and ending on the second anniversary thereof.

(iv)  The Lot Release Amount applicable to a Home in Village at Orenco shall be $65,000 during the period beginning on the Effective Date and ending on the day prior to the first anniversary thereof and $75,000 thereafter, subject to adjustment at the election of the holder of such Claim once at any time after the second anniversary of the Effective Date as provided in this clause (iv) below.  An election to adjust the Lot Release Amount hereunder shall be made by giving written notice thereof to the Reorganized Debtor.  As soon as practicable after such notice is given, the Reorganized Debtor shall engage a qualified real estate appraiser to provide an opinion as to the "fair market value" of the platted lots in Village at Orenco, without regard to value attributable to improvements for vertical construction, as of the first day of the month next following the month in which the notice is given.  If the quotient of the "fair market value" of the platted lots, as determined by the appraisal, divided by the number of the lots that are appraised is greater than $75,000, the quotient shall become the Lot Release Amount for the sale of Homes that close from and after the date that the appraisal report is delivered to the Reorganized Debtor.  Except as otherwise provided in the Amended Loan

Page 8 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

Documents, the appraisal shall be performed by the appraiser who prepared the latest report for the Debtor or for the Reorganized Debtor, as the case may be.

(v)  The Reorganized Debtor's obligations under the Amended Loan Documents shall at all times be secured by a first priority trust deed lien on the lots in Village at Orenco and on all improvements thereon and by a first priority security interest in the cash collateral thereof, in each case, subject and subordinate only to Permitted Liens.  The Class 2 Claimant's cash collateral will at all times be held in a Blocked Account maintained at Bank of America at a branch to be determined.  There will be deposited into the Blocked Account (A) on the Effective Date, or as soon thereafter as is practicable, all funds then in the blocked DIP account for Village at Orenco, and (B) from time to time thereafter in connection with each sale of a Home in Village at Orenco, the following amount: (1) if the Home that is sold is one that was completed on the Effective Date (including a model home), the amount of $250,000, or (2) for other Homes, the total amount of all costs and expenses incurred by the Debtor after the Petition Date or by the Reorganized Debtor after the Effective Date in connection with the construction of such Home and which are paid from the blocked DIP account (prior to the Effective Date) or from the Blocked Account (after the Effective Date), to the extent that the Blocked Account has not been replenished for such advances from other sources.  Except as prohibited by the terms of the Amended Loan Documents, the Reorganized Debtor will be permitted to use the funds in the Blocked Account, from time to time until all lots in Village at Orenco have been sold or otherwise disposed of, solely for the purposes of paying obligations incurred by it in the ordinary course of business in connection with the construction of new Homes on lots in Village at Orenco.  Except for the Lot Release Amounts to be paid to the Class 2 Claimant and for the amounts that are required to be deposited into the Blocked Account, the Reorganized Debtor will retain for general

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

corporate purposes all proceeds from the sale of completed Homes in Village at Orenco made in the ordinary course of business, in each case, free and clear of the Class 2 Claimant's lien.

(vi)  Except as otherwise provided in the Amended Loan Documents and subject to the provisions of the next sentence for sales other than in the ordinary course of business, each sale of a completed Home by the Reorganized Debtor in the ordinary course of business shall be free and clear of all liens thereon which secure the Class 2 Claim, with such liens to attach to the proceeds of sale (in each case net of all direct and customary costs of sale and of property taxes and similar governmental impositions payable in connection with such sale) to the extent of the Lot Release Amount and of the amounts that are required to be deposited into the Blocked Account under the provisions of clause (v) above.  Anything in this Plan to the contrary notwithstanding, in the event that any Collateral securing the Class 2 Claim is to be sold by the Reorganized Debtor other than in the ordinary course of business and if, at such time, the Class 2 Claim remains unsatisfied, such sale shall be subject to the Class 2 Claimant's right to credit bid at such sale.

(vii) On the Effective Date, all Causes of Action against the holder of the Class 2 Claim, if any, shall be deemed waived and relinquished by the Reorganized Debtor.

c.    Class 3:  Columbia State Bank's Secured Claim.  Class 3 is impaired by the Plan, and the holder of the Class 3 Claim is entitled to vote on the Plan.  The Class 3 Claim shall receive the treatment described in this paragraph.

(i)  The Allowed Amount of the Class 3 Claim shall be the amount equal to the excess of $4,500,000 over the sum of all payments made by the Debtor on account of such Claim during the period October 1, 2009, through (but not including) the

Page 10 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Effective Date.

(ii)  On the Effective Date, the Reorganized Debtor shall execute and deliver the Amended Loan Documents to the holder of the Class 3 Claim.  The original principal amount of the replacement promissory note (the "Class 3 Note") will be the Allowed Amount of the Class 3 Claim on the Effective Date.

(iii)  Except as otherwise provided in the Amended Loan Documents, the Reorganized Debtor shall pay to the holder of the Class 3 Note (A) on the first Business Day of each month, commencing on the first Business Day following the month in which the Effective Date falls, the amount of interest that accrues on the unpaid principal balance of the note at the Lender Interest Rate through the last day of the month immediately preceding the month in which such payment is due, (B) a principal amount equal to the Lot Release Amount at the closing of each sale of a Home in Walnut Creek, and (C) on or before the third anniversary of the Effective Date, the entire unpaid balance of principal and interest owing under the Class 3 Note on such date.

(iv)  The Lot Release Amount for a Home in Walnut Creek shall be $80,000.

(v)  The Reorganized Debtor's obligations under the Amended Loan Documents shall at all times be secured  by a first priority trust deed lien on the lots in Walnut Creek and on all improvements thereon and by a first priority security interest in the cash collateral thereof, in each case, subject and subordinate only to Permitted Liens. The Class 3 Claimant's  cash collateral will at all times be held in a Blocked Account maintained at Columbia State Bank at a branch to be determined.  There will be deposited into the Blocked Account (A) on the Effective Date, or as soon thereafter as is practicable, all funds then in the blocked DIP account for Walnut Creek, and (B) from time to time thereafter in connection with each sale of a Home in Walnut Creek, the

Page 11 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

following amount: (1) if the Home that is sold is one that was completed on the Effective Date (including a model home), the amount of $167,900 for a "Juniper"-style home or the amount of $153,100 for a "Willow"-style home, or (2) for other Homes, the total amount of all costs and expenses incurred by the Debtor after the Petition Date or by the Reorganized Debtor after the Effective Date in connection with the construction of such Home and which are paid from the blocked DIP account (prior to the Effective Date) or from the Blocked Account (after the Effective Date), to the extent that the Blocked Account has not been replenished for such advances from other sources.  Except as prohibited by the terms of the Amended Loan Documents, the Reorganized Debtor will be permitted to use the funds in the Blocked Account, from time to time until all lots in Walnut Creek have been sold or otherwise disposed of, solely for the purposes of paying obligations incurred by it in the ordinary course of business in connection with the construction of new Homes on lots in Walnut Creek.  Except for the Lot Release Amounts to be paid to the Class 3 Claimant and for the amounts that are required to be deposited into the Blocked Account, the Reorganized Debtor will retain for general corporate purposes all proceeds from the sale of completed Homes in Walnut Creek made in the ordinary course of business, in each case, free and clear of the Class 3 Claimant's lien.

(vi)  Except as otherwise provided in the Amended Loan Documents and subject  to the provisions of the next sentence for sales other than in the ordinary course of business, each sale of a completed Home by the Reorganized Debtor in the ordinary course of business shall be free and clear of all liens thereon which secure the Class 3 Claim, with such liens to attach to the proceeds of sale (in each case net of all direct and customary costs of sale and of property taxes and similar governmental impositions payable in connection with such sale) to the extent of the Lot Release

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Amount and of the amounts that are required to be deposited into the Blocked Account under the provisions of clause (v) above.  Anything in this Plan to the contrary notwithstanding, in the event that any Collateral securing the Class 3 Claim is to be sold by the Reorganized Debtor other than in the ordinary course of business and if, at such time, the Class 3 Claim remains unsatisfied, such sale shall be subject to the Class 3 Claimant's right to credit bid at such sale.

(vii) On the Effective Date, all Causes of Action against the holder of the Class 3 Claim, if any, shall be deemed waived and relinquished by the Reorganized Debtor.

d.    Class 4:  Construction Lien Claims.  Class 4 is impaired by the Plan, and each holder of a Class 4 Claim is entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 4 Claim, in Cash from the proceeds of the Collateral securing such Claim, the Allowed Amount thereof on the later of (i) ten Business Days after entry of a Final Order determining the validity, priority and extent of such Class 4 Claim or after an agreement is reached among such holder, the Reorganized Debtor and the Lender which holds the recorded trust deed lien on the property on which such holder asserts a statutory lien as to the Allowed Amount of such Class 4 Claim, or (ii) the closing of a sale of the Collateral securing such Class 4 Claim.  Nothing in this Plan shall affect any Final Order determining the validity, priority or extent of a Class 4 Claim which is entered before the Effective Date.  Until the Allowed Amount of a Class 4 Claim has been fully paid or satisfied, the lien securing such Claim shall remain valid and effective notwithstanding the expiration of the date by which such lien must be foreclosed under Oregon's Construction Lien Law.  Upon payment of the Allowed Amount of a Class 4 Claim, the Collateral securing such Claim shall be free and clear of all liens securing such Claim.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

e.       Class 5:  First Independent Bank's Secured Claim.  Class 5 is not impaired by the Plan, and the holder of the Class 5 Claim is not entitled to vote on the Plan.  Notwithstanding the occurrence of the Effective Date, the Class 5 Claim shall continue to be secured by a first priority lien on the cash proceeds of Lots 1, 2, 9, and 59 in Victoria Gardens, in each case, subject and subordinate only to liens that secure Allowed Class 4 Claims.  The Class 5 Claim shall be satisfied from such cash collateral in accordance with the terms of the Agreement for Allowance of Claims and Disposition of Collateral, dated as of January 25, 2010, between the Debtor and First Independent Bank, as approved by the Court's Order Approving Settlement of Claims of First Independent Bank entered on March 8, 2010, as Document #1967 (the "FIB Settlement Agreement").  Notwithstanding anything to the contrary contained elsewhere in the Plan, the provisions of the FIB Settlement Agreement shall continue in full force and effect after the Effective Date.

f.       Class 6:  JP Morgan Chase Bank's Secured Claim.  Class 6 is impaired by the Plan, and the holder of the Class 6 Claim is entitled to vote on the Plan. The Class 6 Claim shall receive the treatment described in this paragraph.

(i)  The Allowed Amount of the Class 6 Claim shall be the amount equal to the Fair Value, as of the Effective Date, of the Collateral securing such Claim, which shall be the amount equal to the difference between (A) the sum of (1) the total number of lots in Phase 6 on the Effective Date on which vertical construction has not commenced multiplied by the stipulated fair value of $30,357 per lot, (2) the total number of lots in Phase 7 on the Effective Date on which vertical construction has not commenced multiplied by the stipulated fair value of $43,333 per lot, (3) for each Home under construction on the Effective Date, the stipulated fair value of the lot under clause (1) or (2) above, as the case may be, plus the total amount of all costs and expenses

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1  incurred by the Debtor after the Petition Date in connection with the construction of such

2  Home which are paid before the Effective Date from funds in the blocked DIP account

3  for Willamette Landing, (4) the number of completed Homes (including the model

4  homes) in Phase 6 on the Effective Date multiplied by $187,300, (5) the number of

5  completed Homes (including the model home) in Phase 7 on the Effective Date

6  multiplied by $238,880, (6) the amount of $613,280, representing the stipulated fair value

7  of the three model homes on lots 358, 359 and 360, and (7) the amount on deposit in the

8  blocked DIP account for Willamette Landing on the Effective Date, and (B) the sum of

9  (1) all Claims for ad valorem property taxes that are secured by liens on Willamette

10  Landing which remain unpaid on the Effective Date, (2) all Class 4 Claims that are

11  secured by a replacement lien on funds in the blocked DIP account for Willamette

12  Landing and which remain unpaid or otherwise unresolved on the Effective Date, and (3)

13  the total amount of all costs and expenses incurred by the Debtor after the Petition Date

14  in connection with the construction of Homes in Willamette Landing which remain

15  unpaid on the Effective Date.  The election made by the holder of the Class 6 Claim

16  under section 1111(b)(2) of the Bankruptcy Code shall be deemed revoked for the

17  purposes of this Plan.

18

19          (ii)  On the Effective Date, the Reorganized Debtor shall execute and

20  deliver the Amended Loan Documents to the holder of the Class 6 Claim.  The original

21  principal amount of the replacement promissory note (the "Class 6 Note") will be the

22  Allowed Amount of the Class 6 Claim on the Effective Date.

23          (iii)  Except as otherwise provided in the Amended Loan

24  Documents, the Reorganized Debtor shall pay to the holder of the Class 6 Note (A) on

25  the first Business Day of each month, commencing on the first Business Day following

26  the month in which the Effective Date falls, the amount of interest that accrues on the

Page 15 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd   **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

unpaid principal balance of the note at the Lender Interest Rate through the last day of the month immediately preceding the month in which such payment is due, (B) a principal amount equal to the applicable Lot Release Amount at the closing of each sale of a Home in Phase 6 or Phase 7 of Willamette Landing, and (C) on or before the earlier of the third anniversary of the Effective Date and the date on which all lots in Phases 6 and 7 of Willamette Landing have been sold and the sales have closed, the entire unpaid balance of principal and interest owing under the Class 6 Note on such date.

(iv)  The Lot Release Amount applicable to a Home in Phase 6 of Willamette Landing shall be $30,357 during the period beginning on the Effective Date and ending on the day prior to the first anniversary thereof and $40,357 thereafter and the Lot Release Amount applicable to a Home in Phase 7 of Willamette Landing shall be $43,333 during the period beginning on the Effective Date and ending on the day prior to the first anniversary thereof and $53,333 thereafter, in each case subject to adjustment at the election of the holder of such Claim from time to time, but no more frequently than once within any 180-day period, as provided in this clause (iv) below.  An election to adjust a Lot Release Amount hereunder shall be made by giving written notice thereof to the Reorganized Debtor.  As soon as practicable after such notice is given, the Reorganized Debtor shall engage a qualified real estate appraiser to provide an opinion as to the "fair market value" of the platted lots in Phase 6 or Phase 7, as the case may be, without regard to value attributable to improvements for vertical construction, as of the first day of the month next following the month in which the notice is given.  The quotient of the "fair market value" of the platted lots, as determined by the appraisal, divided by the number of the lots that are appraised shall become the Lot Release Amount for the sale of Homes in the applicable Phase that close from and after the date that the appraisal report is delivered to the Reorganized Debtor.  Except as otherwise

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd   **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

provided in the Amended Loan Documents, the appraisal shall be performed by the appraiser who prepared the latest report for the Debtor or for the Reorganized Debtor, as the case may be.

(v) The Reorganized Debtor's obligations under the Amended Loan Documents shall at all times be secured by a first priority trust deed lien on the lots in Phases 6 and 7 of Willamette Landing and on all improvements thereon and by a first priority security interest in the cash collateral thereof, in each case, subject and subordinate only to Permitted Liens.  The Class 6 Claimant's cash collateral will at all times be held in a Blocked Account maintained at a depository bank to be designated by the Class 6 Claimant at a branch to be determined.  There will be deposited into the Blocked Account (A) on the Effective Date, or as soon thereafter as is practicable, all funds then in the blocked DIP account for Willamette Landing, and (B) from time to time thereafter in connection with each sale of a Home in Phase 6 or Phase 7 of Willamette Landing, the following amount: (1) if the Home that is sold is one that was completed on the Effective Date, an amount equal to the excess of the stipulated fair value of such Home in clause (i) above (i.e. $175,500 for the model home on lot 358, $198,900 for the model home on lot 359, $238,880 for the model home on lot 360, $187,300 for a completed home in Phase 6 other than a model home, and $238,880 for a completed home in Phase 7 other than a model home) over the applicable Lot Release Amount, or (2) for other Homes, the total amount of all costs and expenses incurred by the Debtor after the Petition Date or by the Reorganized Debtor after the Effective Date in connection with the construction of such Home and which are paid from the blocked DIP account (prior to the Effective Date) or from the Blocked Account (after the Effective Date), to the extent that the Blocked Account has not been replenished for such advances from other sources.  Except as prohibited by the terms of the Amended Loan Documents,

Page 17 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

the Reorganized Debtor will be permitted to use the funds in the Blocked Account, from time to time until all lots in Phases 6 and 7 of Willamette Landing have been sold or otherwise disposed of, solely for the purposes of paying obligations incurred by it in the ordinary course of business in connection with the construction of new Homes on lots in Phases 6 and 7 of Willamette Landing.  Except for the Lot Release Amounts to be paid to the Class 6 Claimant and for the amounts that are required to be deposited into the Blocked Account, the Reorganized Debtor will retain for general corporate purposes all proceeds from the sale of completed Homes in Willamette Landing made in the ordinary course of business, in each case, free and clear of the Class 6 Claimant's lien.

(vi)  Except as otherwise provided in the Amended Loan Documents and subject to the provisions of the next sentence for sales other than in the ordinary course of business, each sale of a completed Home by the Reorganized Debtor in the ordinary course of business shall be free and clear of all liens thereon which secure the Class 6 Claim, with such liens to attach to the proceeds of sale (in each case net of all direct and customary costs of sale and of property taxes and similar governmental impositions payable in connection with such sale) to the extent of the Lot Release Amount and of the amounts that are required to be deposited into the Blocked Account under the provisions of clause (v) above.  Anything in this Plan to the contrary notwithstanding, in the event that any Collateral securing the Class 6 Claim is to be sold by the Reorganized Debtor other than in the ordinary course of business and if, at such time, the Class 6 Claim remains unsatisfied, such sale shall be subject to the Class 6 Claimant's right to credit bid at such sale.

(vii) On the Effective Date, all Causes of Action against the holder of the Class 6 Claim, if any, shall be deemed waived and relinquished by the Reorganized Debtor.

DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

g.      Class 7:  Key Bank's Claims.  Class 7 is impaired by the Plan, and the holder of the Class 7 Claims is entitled to vote on the Plan.  The Class 7 Claims shall receive the treatment described in this paragraph.

(i) On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor and KeyBank shall cause to be dismissed, with prejudice and without cost to any party, the appeal that is pending in the United States Court of Appeals for the Ninth Circuit under Case No. 09-35680.

(ii)  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall pay to the holder of the Class 7 Claims, in partial satisfaction of such Claims, all funds then on deposit in the blocked DIP accounts for Bauer Highlands, Edgewater on the Tualatin ("Edgewater"), Stonewater and The Q Condominiums at Orenco Station (collectively, the "KeyBank Collateral DIP Accounts"), less the sum of (A) all Claims for ad valorem property taxes that are secured by liens on Edgewater Phases 1, 2 and East which remain unpaid on the Effective Date, (B) 125 percent of all Class 4 Claims that are secured by a replacement lien on funds in the KeyBank Collateral DIP Accounts and which remain unpaid or otherwise unresolved on the Effective Date, and (C) the total amount of all costs and expenses incurred by the Debtor after the Petition Date in connection with the construction of Homes in Edgewater which remain unpaid on the Effective Date.  Promptly following payment in full of all property tax Claims, all Allowed Class 4 Claims, and all costs and expenses described in clauses (A), (B) and (C) of the immediately preceding sentence, the Reorganized Debtor shall pay to the holder of the Class 7 Claims all funds then remaining in the KeyBank Collateral DIP Accounts.

(iii)  The Allowed Amount of the Class 7 Claims shall be the amount equal to the sum of (A) the total amount of all costs and expenses incurred by the Debtor

Page 19 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

after the Petition Date in connection with the construction of the Homes in Edgewater

Phases 1, 2 and East that are completed or under construction on the Effective Date (each

a "Started Home" and collectively the "Started Homes") which were or will be paid from

funds in the KeyBank Collateral DIP Accounts, (B) the product of the total number of lots

in Edgewater Phases 1, 2 and East on the Effective Date (including Started Homes)

multiplied by $75,000, and (C) $1,700,000, without adjustment for payments made to

such holder before the Effective Date or pursuant to clause (ii) above.  The portion of the

Allowed Amount of the Class 7 Claims allocable to the Started Homes shall be set forth

in a schedule, which shall be delivered to the holder of the Class 7 Claims as soon as

practicable after the Effective Date.  The Allowed Amount of the Class 7 Claims

allocable to the Started Homes shall be reduced as the Started Homes are sold, in each

case by the amount shown in such schedule.

      (iv)  On the Effective Date, the Reorganized Debtor shall (A) pay to

the holder of the Class 7 Claims the amount of $1,700,000, and (B) execute and deliver

the Amended Loan Documents to the holder of the Class 7 Claims.  The original principal

amount of the replacement promissory note (the "Class 7 Note") will be the amount equal

to the excess of the Allowed Amount of the Class 7 Claims on the Effective Date over

$1,700,000.  The holder of the Class 7 Note shall not have recourse against the

Reorganized Debtor on account of the indebtedness evidenced thereby, but will have only

the rights provided in this Plan and in the Amended Loan Documents with respect to the

property that from time to time secures the Class 7 Note.

      (v)  Except as otherwise provided in the Amended Loan Documents,

the Reorganized Debtor shall pay to the holder of the Class 7 Note (A) on the first

Business Day of each month, commencing the first Business Day following the month in

which the Effective Date falls, the amount of interest that accrues on the unpaid principal

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

balance of the note at the Lender Interest Rate through the last day of the month immediately preceding the month in which such payment is due, (B) an amount equal to the applicable Lot Release Amount at the closing of each sale of a completed Home in Edgewater, and (C) on or before the fifth anniversary of the Effective Date, the entire unpaid balance of principal and interest owing under the Class 7 Note on such date.

(vi)   On the Effective Date, subject to KeyBank's receipt of the payments to be made to it on the Effective Date under clauses (ii) and (iv)(A) above, the Reorganized Debtor shall have access to the KeyBank Revolving Vertical Construction Loan Facility.

(vii)  The Lot Release Amount applicable to a Home in Edgewater shall be (A) if the Home that is sold is one of the Started Homes, the amount that is required to be paid to the holder of the Class 7 Note under the Edgewater Started Home Waterfall, or (B) for other Homes, the amount that is set forth in a separate schedule to be agreed upon by the Debtor and the holder of the Class 7 Claims before the Confirmation Date (provided that that the mean average of the Lot Release Amounts for such Homes shall be $75,000).

(viii)  The Reorganized Debtor's obligations under the Amended Loan Documents shall at all times be secured by a first priority trust deed lien on the lots in Edgewater Phases 1, 2 and East and on all improvements located thereon and by a first priority security interest in the Blocked Account, in each case, subject and subordinate only to Permitted Liens.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall establish a Blocked Account and deposit therein the amounts required by the terms of the agreement governing the KeyBank Revolving Vertical Construction Loan Facility for reserves for interest charges and property taxes assessed against Edgewater Phases 1, 2 and East.  Except for the Lot Release Amounts that are

Page 21 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1  required to be paid under the Class 7 Note and for the amounts that are required to be paid

2  at closings under the terms of the agreement governing the KeyBank Revolving Vertical

3  Construction Loan Facility, the Reorganized Debtor will retain for general corporate

4  purposes all proceeds from the sale of completed Homes in Edgewater made in the

5  ordinary course of business, in each case, free and clear of the Class 7 Claimant's lien.

6
7            (ix)  Except as otherwise provided in the Amended Loan Documents

8  and subject to the provisions of the next sentence for sales other than in the ordinary

9  course of business, each sale of a completed Home by the Reorganized Debtor in the

10  ordinary course of business shall be free and clear of all liens thereon which secure the

11  Class 7 Claims upon payment to the holder of the Class 7 Claims of the applicable Lot

12  Release Amount and of the amounts that are required to be paid at closing under the terms

13  of the agreement governing the KeyBank Revolving Vertical Construction Loan Facility.

14  Anything in this Plan to the contrary notwithstanding, in the event that any Collateral

15  securing the Class 7 Claims is to be sold by the Reorganized Debtor other than in the

16  ordinary course of business and if, at such time, the Class 7 Claims remain unsatisfied,

17  such sale shall be subject to the Class 7 Claimant's right to credit bid at such sale.

18            (x)      On the Effective Date, the holder of the Class 7 Claims shall

19  be permitted to foreclose its trust deed liens on, and otherwise exercise all rights and

20  remedies available to such holder until applicable nonbankruptcy law with regard to, all

21  Collateral that then secures the Class 7 Claims other than the lots in Edgewater Phases 1,

22  2 and East, the improvements located thereon and all personal property related thereto.

23  At any time after the Effective Date, the Reorganized Debtor shall, from time to time

24  upon the written request of the holder of the Class 7 Claims, convey to KeyBank, or to an

25  entity designated by keyBank, any or all of such Collateral, in each case, subject to all

26  liens and other encumbrances on such property and pursuant to a statutory bargain and

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

sale deed containing a non-merger clause.

(xi) On the Effective Date, all Causes of Action against the holder of the Class 7 Claims, if any, shall be deemed waived and relinquished by the Reorganized Debtor.

h.    Class 8:  Dennis Pahlisch's Secured Claim.  Class 8 is not impaired by the Plan, and the holder of the Class 8 Claim is not entitled to vote on the Plan.  The Class 8 Claim shall be paid by the Reorganized Debtor in accordance with the terms of the agreements under which such Claim arose without acceleration of the maturity date thereof.

i.    Class 9:  PMSI Equipment Secured Claims.  Class 9 is not impaired by the Plan, and the holders of the Class 9 Claims are not entitled to vote on the Plan.  At the Reorganized Debtor's option, each Class 9 Claim will be satisfied in a manner that is permissible under section 1124 of the Bankruptcy Code.

j.    Class 10:  Property Tax Claims.  Class 10 is not impaired by the Plan, and the holders of the Class 10 Claims are not entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 10 Claim that is secured by a Retained Project the full amount of such Claim on the Effective Date or as soon thereafter as the Allowed Amount is determined.

k.    Class 11:  Wachovia's Claims.  Class 11 is impaired by the Plan, and the holder of the Class 11 Claims is entitled to vote on the Plan.  The Class 11 Claims shall receive the treatment described in this paragraph.

(i) On the Effective Date, if not earlier paid, the Reorganized Debtor shall pay to the holder of the Class 11 Claims, in partial satisfaction of such Claims, all funds then on deposit in the blocked DIP account for the subdivision in Wilsonville, Oregon known as Legend at Villebois (the "Villebois DIP Account"), less the sum of (A)

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

125 percent of all Class 4 Claims that are secured by a replacement lien on funds in the Villebois DIP Account and which remain unpaid or otherwise unresolved on the Effective Date, and (B) the total amount of all costs and expenses incurred by the Debtor after the Petition Date in connection with the construction of Homes in Villebois which remain unpaid on the Effective Date and on account of which there is no commitment by the holder of the Class 11 Claims to make advances to the Reorganized Debtor under the Wachovia Revolving Vertical Construction Loan Facility.  Promptly following payment in full of all Allowed Class 4 Claims and all costs and expenses described in clauses (A) and (B) of the immediately preceding sentence, the Reorganized Debtor shall pay to the holder of the Class 11 Claims all funds then remaining in the Villebois DIP Account.

(ii)  The Allowed Amount of the Class 11 Claims shall be the amount equal to the excess of $21,573,758.96 over the total amount that is paid to the holder of the Class 11 Claims from the Villebois DIP Account (whether paid before or after the Effective Date).

(iii)  On the Effective Date, the Reorganized Debtor shall execute and deliver the Amended Loan Documents to the holder of the Class 11 Claims.  The original principal amount of the replacement promissory note (the "Class 11 Note") will be the Allowed Amount of the Class 11 Claims on the Effective Date.  The holder of the Class 11 Note shall not have recourse against the Reorganized Debtor on account of the indebtedness evidenced thereby, but shall have only the rights provided in this Plan and in the Amended Loan Documents with respect to the property that from time to time secures the Class 11 Note.

(iv)  Except as otherwise provided in the Amended Loan Documents, the Reorganized Debtor shall pay to the holder of the Class 11 Note (A) on the Effective Date, the amount of $1,200,000, (B) on the Effective Date, or as soon

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

thereafter as is practicable after the initial advance is available to the Reorganized Debtor under the Wachovia Revolving Vertical Construction Loan Facility, the amount of $310,000, (C) an amount equal to the Lot Release Amount at the closing of each sale of a Home in Villebois Phase 1, and (D) on or before the fifth anniversary of the Effective Date, the entire unpaid balance of principal and interest, if any, owing under the Class 11 Note on such date; provided, however, that if no Event of Default (as defined in the Amended Loan Documents) has occurred and is continuing, the Class 11 Note shall be deemed fully paid and satisfied when the Reorganized Debtor has made payments thereunder totaling $16,630,000, exclusive of payments made from the Villebois DIP Account (whether paid before or after the Effective Date).

       (v)  On the Effective Date, subject to Wachovia's receipt of the payments to be made to it on the Effective Date under clauses (i) and (iv)(A) above, the Reorganized Debtor shall have access to the Wachovia Revolving Vertical Construction Loan Facility.

       (vi)  The Lot Release Amount for a Home in Villebois Phase 1 shall be $90,000.

       (vii)  The Reorganized Debtor's obligations under the Amended Loan Documents shall at all times be secured by a first priority trust deed lien on the lots in Villebois Phase 1 and on all improvements thereon and by a first priority security interest in the personal property related thereto and in the Blocked Account, in each case, subject and subordinate only to Permitted Liens.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall establish a Blocked Account and deposit therein the amounts required by the terms of the agreement governing the Wachovia Revolving Vertical Construction Loan Facility for reserves for property taxes and homeowner association fees assessed against Villebois Phase 1.  Except for the Lot

Page 25 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

Release Amounts that are required to be paid under the Class 11 Note and for the amounts that are required to be paid at closings under the terms of the agreement governing the Wachovia Revolving Vertical Construction Loan Facility, the Reorganized Debtor will retain for general corporate purposes all proceeds from the sale of completed Homes in Villebois Phase 1 made in the ordinary course of business, in each case, free and clear of the Class 11 Claimant's lien.

(viii)  Except as otherwise provided in the Amended Loan Documents and subject to the provisions of the next sentence for sales other than in the ordinary course of business, each sale of a completed Home by the Reorganized Debtor in the ordinary course of business shall be free and clear of all liens thereon which secure the Class 11 Claims upon payment to the holder of Class 11 Claims of the Lot Release Amount and of the amounts that are required to be paid at closing under the terms of the agreement governing the Wachovia Revolving Vertical Construction Loan Facility. Anything in this Plan to the contrary notwithstanding, in the event that any Collateral securing the Class 11 Claims is to be sold by the Reorganized Debtor other than in the ordinary course of business and if, at such time, the Class 11 Claims remain unsatisfied, such sale shall be subject to the Class 11 Claimant's right to credit bid at such sale.

(ix) On the Effective Date, all Causes of Action against the holder of the Class 11 Claims, if any, shall be deemed waived and relinquished by the Reorganized Debtor.

l.    Class 12:  Priority Employee-Related Claims.  Class 12 is not impaired by the Plan, and the holders of Class 12 Claims are not entitled to vote on the Plan.  The rights to which the Class 12 Claims entitle the holders thereof shall remain unaltered by the Plan.  The Reorganized Debtor shall pay or perform, in each case when due to be paid or performed by the Debtor, the Allowed Class 12 Claims to the extent

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

they have not been paid or otherwise satisfied prior to the Effective Date.

m.    Class 13:  Priority Consumer Deposit Claims.  Class 13 is not impaired by the Plan, and the holders of Class 13 Claims are not entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 13 Claim, in Cash, an amount equal to the Allowed Amount thereof on the Effective Date or as soon thereafter as the Allowed Amount is determined.

n.    Class 14:  Customer Home Warranty Claims.  Class 14 is not impaired by the Plan, and the holders of Class 14 Claims are not entitled to vote on the Plan.  The rights to which the Class 14 Claims entitle the holders thereof shall remain unaltered by the Plan.  The Reorganized Debtor shall pay or perform, in each case when due to be paid or performed by the Debtor, the Allowed Class 14 Claims to the extent they have not been paid or otherwise satisfied prior to the Effective Date.

o.    Class 15:  Director and Officer Indemnity Claims.  Class 15 is not impaired by the Plan, and the holders of Class 15 Claims are not entitled to vote on the Plan.  The rights to which the Class 15 Claims entitle the holders thereof shall remain unaltered by the Plan.

p.    Class 16:  Surety Bond Claims.  Class 16 is not impaired by the Plan, and the holders of Class 16 Claims are not entitled to vote on the Plan.  The rights to which the Class 16 Claims entitle the holders thereof shall remain unaltered by the Plan.

q.    Class 17:  Contractor Unsecured Claims.  Class 17 is impaired by the Plan, and each holder of a Class 17 Claim is entitled to vote on the Plan.  The Reorganized Debtor shall pay to each holder of an Allowed Class 17 Claim, in Cash, an amount equal to 50 percent of the Allowed Amount thereof on the Effective Date or as soon thereafter as the Allowed Amount is determined.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1
2          r.      Class 18:  Convenience Claims. Class 18 is impaired by the Plan,
3   and each holder of a Class 18 Claim is entitled to vote on the Plan.  The Reorganized
4   Debtor shall pay to each holder of an Allowed Class 18 Claim, in Cash, an amount equal
5   to 50 percent of the Allowed Amount thereof on the Effective Date or as soon thereafter
6   as the Allowed Amount is determined.
7          s.      Class 19:  Other Claims.  Class 19 is impaired by the Plan, and each
8   holder of an Allowed Class 19 Claim is entitled to vote on the Plan.  The Reorganized
9   Debtor shall pay to each holder of an Allowed Class 19 Claim, in Cash, such holder's Pro
10  Rata share of the following amounts up to the Allowed Amount of such Claim: (i)
11  $5,000,000 (the "Initial Plan Payment"); (ii) the greater of $7,000,000 and the amount
12  equal to 35 percent of cumulative Adjusted EBITDA for the period beginning the
13  Effective Date and ending the last day of the month immediately preceding the fourth
14  anniversary of the Effective Date and ending the last day of the month immediately
15  preceding the fourth anniversary of the Effective Date (the "Annual Plan Payments");
16  and (iii) the amount equal to 100 percent of Insider Recoveries.  The Reorganized Debtor
17  shall fund these Cash distributions as follows: (A) on the Effective Date, the Initial Plan
18  Payment; (B) within 90 days after each anniversary of the Effective date, until the fourth
19  anniversary of the Effective Date, the amount equal to the sum of (1) the Insider
20  Recoveries collected by the Committee during the 12-month period ending on such
21  anniversary, and (2) the excess of 35 percent of Adjusted EBITDA, measured from the
22  Effective Date through the last day of the month immediately preceding such
23  anniversary, over the total amount of Annual Plan Payments previously made by the
24  Reorganized Debtor; and (C) within 180 days after the fourth anniversary of the Effective
25  Date, the amount equal to the shortfall, if any, between $7,000,000 and the total amount
26  of Annual Plan Payments made by the Reorganized Debtor.  Subject to the provisions of

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd     **GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

Article V below, such Cash distributions shall be made to the holders of Allowed Class 19 Claims within 30 days after each distribution is required to be funded by the Reorganized Debtor under this Section 3.2(s).  Until the Reorganized Debtor has fulfilled its obligations under the Plan to the holders of Class 19 Claims, it shall provide such reports and information respecting the Cash distributions paid or required to be paid by the Reorganized Debtor hereunder on account of Allowed Class 19 Claims (including information supporting the calculation of such distributions and about the status of the funding of such distributions) as holders of Class 19 Claims may reasonably request in writing from time to time.

       t.     Class 20:  Equity Interests.  Class 20 is impaired by the Plan, and each Shareholder is conclusively presumed to have rejected the Plan.  All Equity Interests shall be cancelled and extinguished as of the Effective Date, and the Shareholders shall not receive or retain on account of their Equity Interests any property or other consideration under the Plan.

**IV.**

**MEANS FOR THE IMPLEMENTATION**

**OF THE PLAN**

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means for implementation of this Plan.

       4.1    Effective Date Transactions.  On the Effective Date, or as soon thereafter as is practicable, among other things, (a) all Equity Interests then outstanding shall be cancelled, with such cancellation to be effective on the Effective Date regardless of whether the certificates evidencing them are surrendered to the Reorganized Debtor for cancellation, (b) New Common Stock shall be issued by the Reorganized Debtor in accordance with the provisions of Section 4.3 below, (c) the Debtor's corporate name

Page 29 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

shall be changed to "Legend Homes Corporation," (d) the directors and officers of the Reorganized Debtor shall be duly elected or appointed, as the case may be, (e) the Debtor's articles of incorporation and bylaws shall be amended as necessary to comply with the provisions of section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with the Plan, (f) the Reorganized Debtor shall establish the Reserve Account and shall fund the Cash distributions that are required to be made by it hereunder on the Effective Date, and (g) the Reorganized Debtor shall execute and deliver all documents, instruments and agreements that are necessary to implement this Plan.

4.2    <u>Plan Funding</u>.  This Plan shall be funded by a combination of the Debtor's Cash on hand as of the Effective Date and Cash that is collected or generated by the Reorganized Debtor and the Committee after the Effective Date.

4.3    <u>Ownership and Corporate Governance of Reorganized Debtor</u>.  On the Effective Date, all Equity Interests then outstanding shall be cancelled.  Simultaneously with such cancellation, New Common Stock shall be issued by the Reorganized Debtor to Jim L. Chapman, Diane F. Jarvis and James M. Goodrich, who will receive certificates evidencing, respectively, 55 percent, 35 percent and 10 percent of all such shares then issued.  Upon the occurrence of the Effective Date, a new board of directors of the Reorganized Debtor shall be constituted.  Until the Reorganized Debtor has fulfilled its obligations under the Plan to the holders of Class 19 Claims, the number of directors of the Reorganized Debtor shall be five.  Three of the directors shall be elected by the holders of the New Common Stock, and two shall be appointed by majority vote of the Creditors that hold the five largest Allowed Class 19 Claims; provided, however, that one of the directors to be elected by the holders of the New Common Stock shall be a disinterested person who has no less than five years of actual experience in the home

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

building industry other than as an appraiser or lender.

4.4    <u>Continuation of Business Operations</u>.  The Reorganized Debtor shall continue the Debtor's real estate development and homebuilding business.  Among other things, the Reorganized Debtor shall continue its development of and the construction of Homes in the Retained Projects.

4.5    <u>Performance of Plan Obligations by Reorganized Debtor</u>.  The Reorganized Debtor shall  (a) in the exercise of its business judgment, review all Claims and, as advisable, file objections, settle, compromise, withdraw or litigate objections to Claims, (b) in the exercise of its business judgment, enforce, sue on, or settle and compromise Causes of Action, (c) serve as the disbursing agent, without bond, for purposes of making distributions to Creditors and others in accordance with this Plan, and (d) otherwise perform its obligations under this Plan, in each case, as and when the same become due to be paid or performed.

4.6    <u>Continuation of Creditors' Committee</u>.  Notwithstanding the occurrence of the Effective Date, the Committee shall continue to exist for the purposes of enforcing or otherwise resolving the Insider Causes of Action.  After the Effective Date, the Reorganized Debtor will pay the Committee's reasonable costs and expenses (including court costs, attorneys' fees and other professional expenses) of enforcing, resolving and collecting on the Insider Causes of Action.

**V.**

**PROVISIONS GOVERNING DISTRIBUTIONS AND THE**

**RESOLUTION OF DISPUTED AND CONTINGENT CLAIMS**

5.1    <u>Timing of Distributions</u>.  Except as otherwise provided for herein or ordered by the Court, distributions under the Plan shall be made on the Effective Date and on each Distribution Date, or, in each case, as soon thereafter as is practicable.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

5.2 <u>No Postpetition Interest</u>. Unless otherwise specifically provided for in the Plan or in the Confirmation Order, interest shall not accrue on Claims after the Petition Date and no holder of a Claim shall be entitled to interest accruing after the Petition Date on any Claim.

5.3 <u>Form of Payment</u>. Unless otherwise agreed by the Reorganized Debtor, each Cash distribution pursuant to this Plan shall be made by means of a check. If the payee requests that distributions be made by electronic funds transfer, the payee shall be responsible for payment of the wire transfer fees.

5.4 <u>Withholding and Reporting Requirements</u>. In connection with the Plan, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions made under the Plan. All entities holding Claims shall be required to provide any information necessary to effect the withholding or reporting of such taxes. The Reorganized Debtor may condition any distribution to a Creditor upon receipt of any such information.

5.5 <u>No Obligation to Make Cash Payments of $10 or Less on Account of Allowed Claims</u>. If a Cash payment otherwise provided for under the Plan on account of an Allowed Claim would be Ten Dollars ($10.00) or less (whether in the aggregate or on any Distribution Date), the Reorganized Debtor shall not be obligated to make such distribution on account of such Allowed Claim. In the event the Reorganized Debtor elects not to make such a distribution, the holder of such Claim shall have no recourse against the Reorganized Debtor or any other party, and such holder's right to receive such distributions under the Plan shall be extinguished.

DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

5.6    <u>Disputed Distributions</u>.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution under the Plan, the Reorganized Debtor may, in lieu of making such distribution to such entity, make such distribution into the Reserve Fund until the disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute.

5.7    <u>Undeliverable or Unclaimed Distributions</u>.  For a period of 180 days after any particular distribution is made pursuant to this Plan, checks and other property that are unclaimed (including checks that have been returned as undeliverable without a proper forwarding address and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same) with respect to such distribution shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to the Reorganized Debtor of satisfactory proof of entitlement.  The Reorganized Debtor shall make a reasonable effort to ascertain the correct mailing address from information generally available to the public for each holder of an Allowed Claim whose check or other property cannot be mailed or delivered because of the absence of a proper address or whose check has been returned without a proper forwarding address, but it shall not be liable to any such holder for having failed to find a correct mailing address.  On the first day after the expiration of such 180 day period: (i) holders of Allowed Claims previously entitled to such undeliverable or unclaimed property shall no longer be entitled thereto, and (ii) such Claims shall be deemed Disallowed for all purposes.

5.8    <u>Time Bar to Cashing Distribution Checks</u>.  The Reorganized Debtor may (but shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if such check is not negotiated within 60 days after the date of issuance thereof.  Request for reissuance of any check shall be made to the Reorganized Debtor in

Page 33 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

accordance with this Plan, by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the 180 day period set forth in Section 5.7 of the Plan.  After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under this Plan on account of such voided check or such Claim.

5.9     Reserve Fund.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall establish the Reserve Fund.  All Cash in the Reserve Fund will at all times be held and administered by the Reorganized Debtor in trust for the benefit of those entities entitled thereto under the terms of this Plan.

a.     Reserve for Disputed and Contingent Claims.  The Reorganized Debtor shall maintain, in accordance with the provisions of this Plan, a reserve for Disputed Claims and Contingent Claims.  The amounts reserved with respect to a Disputed Claim shall be distributed as provided in the Plan after the Allowed Amount thereof is determined by Final Order or otherwise resolved.  The amounts reserved with respect to a Contingent Claim shall be distributed as provided in the Plan after the contingency on which the Debtor's liability is based has occurred or not occurred or the Debtor's liability for such Claim is fixed by Final Order.

b.     Reserved Amounts and Estimations.  For purposes of effecting the reserve provisions of this Section 5.9 and, upon a request for estimation by the Reorganized Debtor or by the holder of a Disputed or Contingent Claim, the Court will determine what amount of Cash from the initial and subsequent distributions is sufficient to reserve on account of any Disputed or Contingent Claim, pursuant to section 502 of the Bankruptcy Code or other applicable law, in which event the amount so determined will be deemed the Allowed Amount of such Claim for purposes of this Plan, or, in lieu thereof, the Court will determine the maximum amount for such Claim, which amount

Page 34 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

will be the maximum Allowed Amount of such Claim, if such Claim becomes an Allowed Claim in the case of a Disputed Claim or if such Claim becomes fixed in the case of a Contingent Claim.  If a request to estimate a Disputed or Contingent Claim is not made and such Claim is liquidated in amount, the Reorganized Debtor will reserve Cash in the Reserve Fund until the Allowed Amount of such Claim is determined by Final Order or until the contingency on which the Debtor's liability is based has occurred or not occurred, as the case may be.

   c. <u>Distributions From Reserve Fund</u>.  On the next succeeding Distribution Date after the date that the order or judgment of the Court allowing a Disputed Claim becomes a Final Order or the date on which a Contingent Claim becomes fixed by Final Order or otherwise, the Reorganized Debtor shall distribute to the holder of such Claim the amount of Cash that would have been distributed on a prior Distribution Date had such Claim been an Allowed Claim in such Class on such Distribution Date.

  5.10 <u>Transmittal of Distributions and Notices</u>.  Any property or notices, including distributions, that an entity is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that entity at the address indicated on a properly filed proof of claim or, absent such a proof of claim, the address that is listed on the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009; provided, however, that a holder of a Claim may designate a different address for notices and distributions by notifying the Reorganized Debtor of a change of address in writing.  The new address shall be effective upon receipt by the Reorganized Debtor of such notice.

  5.11 <u>Prosecution of Objections to Claims</u>.  Except as otherwise provided in the Plan, after the Effective Date, only the Reorganized Debtor shall have the authority to file

Page 35 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

objections, settle, compromise, withdraw or litigate objections to Claims other than Administrative Expense Claims.  Except as otherwise specifically provided in the Plan or in the Confirmation Order, all objections to Claims other than Administrative Expense Claims shall be filed with the Court not later than 120 days after the Effective Date, unless such period is extended by Court order.  With respect to Claims arising pursuant to section 502(h) of the Bankruptcy Code which are filed after the entry of the Confirmation Order, objections to such Claims shall be filed by the Reorganized Debtor not later than 120 days after proof of such Claim is filed, unless such period is extended by Court order.

5.12    <u>Limitations on Filing or Amending Claims After the Confirmation Date</u>.  Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim.  Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of claim (whether filed to assert a new Claim or to amend a previously filed Claim) filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Reorganized Debtor.

5.13    <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision of the Plan, no distributions under the Plan shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order.  No holder of a Disputed Claim shall have any claim against the Reorganized Debtor or any property reserved in the Reserve Fund on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

**VI.**

**TREATMENT OF EXECUTORY**

**CONTRACTS AND UNEXPIRED LEASES**

6.1    <u>General Assumption of Executory Contracts and Unexpired Leases</u>.

Except as otherwise provided in the Confirmation Order, effective as of the Effective

Date, all executory contracts and unexpired leases of the Debtor not previously rejected

by operation of law or by Court order and not the subject of a motion to reject filed prior

to the Confirmation Date shall be deemed to be automatically assumed by the

Reorganized Debtor as of the Effective Date.  The Confirmation Order shall constitute a

Court order approving such assumptions pursuant to the provisions of sections 365 and

1123(b)(2) of the Bankruptcy Code.  Each contract or lease that is assumed pursuant to

this Plan shall be deemed to include all modifications, amendments, supplements,

restatements or other agreements made directly or indirectly by any agreement,

instrument or other document that in any manner affects such contract or lease (but

excluding any of the foregoing that is not in writing and that purportedly limits, restricts

or impairs the Debtor's rights or benefits under the written documents that evidence such

contract or lease).

6.2    <u>Cure of Assumed Contracts and Leases</u>.  Any monetary amounts that are in

default under a contract or lease that is assumed pursuant to this Plan shall be satisfied by

Cure.  In the event of a dispute regarding (i) the nature or the amount of any Cure, (ii) the

ability of the Reorganized Debtor to provide "adequate assurance of future performance"

(within the meaning of section 365 of the Bankruptcy Code) under any such contract or

lease, or (iii) any other matter pertaining to the assumption of such a contract or lease,

Cure shall occur immediately following the entry of a Final Order resolving the dispute.

Cure costs shall be paid by the Reorganized Debtor.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

**VII.**

**CONDITIONS PRECEDENT**

**TO EFFECTIVE DATE**

7.1    <u>Conditions to Effective Date</u>.  The following conditions must occur and be satisfied for the Plan to become effective and the Effective Date to occur:

a.    The Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, which shall, among other things, (i) find that the Plan complies with all applicable requirements of the Bankruptcy Code, (ii) decree that the Confirmation Order shall supersede any Court orders issued prior to the Confirmation Date that may be inconsistent therewith, (iii) decree that, except as otherwise provided in the Plan or in the Confirmation Order, all transfers of property contemplated under this Plan shall be free and clear of all Claims, security interests, liens, encumbrances and other interests of holders of Claims and Equity Interests, and (iv) provide that any and all executory contracts and unexpired leases that are assumed pursuant to the Plan shall remain in full force and effect for the benefit of the Reorganized Debtor, in each case, notwithstanding any provision in any such contract or lease or in applicable law (including those described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or that enables or requires termination or modification of such contract or lease.

b.    No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 7.1 are satisfied or waived.

c.    All documents, instruments and agreements governing the Wachovia Revolving Vertical Construction Loan Facility shall have been executed and delivered by the Reorganized Debtor and Wachovia.

d.    All documents, instruments and agreements governing the KeyBank

Page 38 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Revolving Vertical Construction Loan Facility shall have been executed and delivered by the Reorganized Debtor and KeyBank.

e.    All other documents, instruments and agreements, each in form and substance satisfactory to the Debtor, provided for under or necessary to implement this Plan shall have been executed and delivered by the parties thereto.

7.2    Waiver of Conditions.  The Debtor may waive any of the conditions to the effectiveness of this Plan set forth in Section 7.1 of this Plan.

7.3    Notice of Effective Date.  On the first business day after the Confirmation Date on which all conditions to effectiveness of this Plan are satisfied or waived as provided in this Section 7, or as soon thereafter as is reasonably practicable, the Debtor shall file with the Court a notice that states the Effective Date.  The Plan shall be deemed to be effective as of 12:01 a.m. (prevailing Pacific Time) on the Effective Date set forth in such notice filed with the Court.

## VIII.

## EFFECTS OF PLAN CONFIRMATION

8.1    Binding Effect.  On the Effective Date, pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, all Creditors and all Shareholders, including each of their respective heirs, legal representatives, successors and assigns, whether or not they accept the Plan.

8.2    Vesting of Estate Property.  Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to sections 1123(a)(5) and 1141 of the Bankruptcy Code, all property of the Estate shall vest in the Reorganized Debtor, in each case, free and clear of all Claims, liens, charges, encumbrances and other interests of Creditors and Shareholders.  As of the Effective Date, the Reorganized Debtor may use and dispose and otherwise deal with such property and may conduct its affairs, in

Page 39 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

each case, without supervision of the Court and free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules other than those restrictions expressly imposed by the Plan or the Confirmation Order.

8.3    <u>Discharge</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Debtor and the Reorganized Debtor shall be discharged from all liability on any and all Claims that arose before the Confirmation Date or that are of a kind specified in section 502(g), 502(h) or 502(j) of the Bankruptcy Code.  This discharge shall be effective on the Effective Date as to each such Claim, whether or not (i) proof of the Claim is filed or deemed filed, (ii) the Claim is an Allowed Claim under this Plan, or (iii) the holder of the Claim votes to accept or reject this Plan.

8.4    <u>Exculpation</u>.  **Neither the Debtor nor the Committee, nor any of their respective officers, directors, members, representatives or agents who served as such during this Chapter 11 case, shall have or incur any liability to any Creditor or Shareholder, or to any other entity, for any act or omission in connection with or arising out of the Chapter 11 case or the pursuit of confirmation of the Plan, except for liability based on willful misconduct or gross negligence, and, in all respects, the Reorganized Debtor and its officers, directors and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; provided, however, that the foregoing protection shall not apply to benefit attorneys or other professional persons employed by the Debtor or the Committee.**

8.5    <u>Effect on Insurance Policies</u>.  Except as otherwise specifically provided in this Section 8.5, notwithstanding anything to the contrary contained elsewhere in the Plan, including any provision herein that purports to be preemptory or supervening, the respective rights, obligations and defenses of the insureds and insurer under each

Page 40 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

insurance policy issued to the Debtor and under the agreements related to each such policy shall be unaffected by the Plan.  Any and all Claims of the insurers that issued such policies before the Petition Date, whether such Claims arise under the policy documents or otherwise, shall be discharged under Section 8.3 hereof and shall be classified and treated as Class 19 Claims under this Plan.  Furthermore, nothing in the Plan, including any provision herein that purports to be preemptory or supervening, shall alter or impair the rights, obligations or defenses of any insurer or of any entity to which the Debtor assigned any of its rights under an insurance policy before the Effective Date.  For the avoidance of doubt, nothing in this Plan shall affect any right of recoupment of an insurer under any insurance policy issued to the Debtor or under any agreements related to any such policy.

## IX.

## ADMINISTRATIVE PROVISIONS

9.1     <u>Retention of Jurisdiction</u>.

a.     <u>Jurisdiction of Bankruptcy Court</u>.  Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 case concerning the Debtor and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of a Claim;

(ii)     hear and determine all applications for compensation and

Page 41 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

reimbursement of expenses of professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(iii)    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is or was a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

(iv)    effectuate performance of and payments under the provisions of the Plan;

(v)    determine any and all pending adversary proceedings, motions, applications, and contested or litigated matters and adversary proceedings or contested matters, whether pending on or brought after the Effective Date consistent with the provisions of the Plan;

(vi)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(vii)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(viii)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(ix)    issue injunctions, enter and implement other orders, or take

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(x)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(xi)    hear and determine any matters arising in connection with or relating to the Plan, the disclosure statement relating to the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan;

(xii)   enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with this Chapter 11 case;

(xiii)  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiv)   hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(xv)    hear and determine all disputes involving the existence, nature or scope of the Debtor's and Reorganized Debtor's discharge under or the injunction created by this Plan;

(xvi)   hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(xvii)  enter a final decree closing the Chapter 11 case concerning

Page 43 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

the Debtor.

b.      Other Courts of Competent Jurisdiction.  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of exercise shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

9.2      Election Pursuant to Section 1129(b) of the Bankruptcy Code.  The Debtor hereby requests confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code if the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan.  In determining whether the requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class or subclass of a Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class or subclass.

9.3      Consummation of the Plan.  The Debtor reserves the right to request that the Confirmation Order include (i) a finding by the Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order, and (ii) the Court's authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

9.4      Modification of the Plan.  The Debtor reserves the right to alter, amend or modify the Plan prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order (whether or not the Plan has been substantially consummated), upon order of the Court after notice and a hearing, the Debtor or the Reorganized Debtor, as the case may be, may alter, amend or modify this Plan, in accordance with the provisions

Page 44 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

of section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

9.5    Exemption from Transfer Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring prior or subsequent to the Confirmation Date, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

9.6    Waivers.  Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefitted by the term to be waived.

9.7    Setoffs, Recoupments and Defenses.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, either of them may have with respect to any Claim (including, without limitation, rights under section 502(d) of the Bankruptcy Code).  Except as otherwise provided in the Plan, in the Confirmation Order or in agreements previously approved by a Final Order, the Reorganized Debtor may, but will not be required to, set off against any Claim or any distributions with respect to such Claim any and all of the claims, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim, the payment of any distribution hereunder or any other action or omission of the Debtor or the Reorganized Debtor, as applicable, nor any provision of the Plan, shall constitute a waiver or release by the Debtor or the Reorganized Debtor, as applicable, of

Page 45 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1   any such claims, rights and Causes of Action that the Debtor or the Reorganized Debtor,
2   as applicable, may possess against such holder.
3
4          9.8    <u>Retention and Enforcement of Causes of Action</u>.  Except as otherwise
5   provided in the Plan or in the Confirmation Order, or in any instrument, release or other
6   agreement entered into in connection with the Plan, in accordance with section
7   1123(b)(3) of the Bankruptcy Code, any rights or Causes of Action under any theory of
8   law (including, without limitation, under the Bankruptcy Code) extant on the Effective
9   Date shall remain fully enforceable.  On the Effective Date, Avoidance Actions and all
10  other Causes of Action shall become the property of the Reorganized Debtor.  These
11  Causes of Action include, but are not limited to, those described in the Disclosure
12  Statement, and the failure of the Debtor to list a Cause of Action in the Disclosure
13  Statement shall not constitute a waiver or release by the Debtor of such Cause of Action.
14  From and after the Effective Date, the Reorganized Debtor shall have the exclusive right
15  and full authority to enforce, sue on, or settle and compromise any and all Causes of
16  Action other than the Insider Causes of Action.  Notwithstanding the occurrence of the
17  Effective Date, the Committee shall continue to have the exclusive right and full
18  authority to enforce, sue on, or settle and compromise any and all of the Insider Causes of
19  Action, as authorized by the Court order entered on September 29, 2009, as Document
20  #1639.  The Debtor expressly reserves all Avoidance Actions and other Causes of Action
21  for later adjudication or other resolution by the Reorganized Debtor or the Committee, as
22  the case may be, and, therefore, no preclusion doctrine (including, without limitation, the
23  doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel
24  or laches) shall apply to any of the Causes of Action upon or after the confirmation or
25  consummation of the Plan.
26         9.9    <u>Cancellation of Documents Evidencing Unsecured Claims</u>.  As of the

Page 46 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

Effective Date, any note, agreement, instrument or other document evidencing an unsecured Claim in any impaired Class shall be deemed cancelled, null and void, except for the right, if any, to receive distributions under this Plan; provided, however, that nothing herein shall impair or affect the liability of any entity other than the Debtor on, or the property of any entity other than the Debtor for, such Claim.

9.10    <u>Payment of United States Trustee Fees</u>.  The Reorganized Debtor shall pay when due all fees incurred pursuant to 28 USC § 1930(a)(6) and shall provide to the United States trustee, on or before the 30th day following the close of each calendar quarter, a financial report of all disbursements made by or on behalf of the Reorganized Debtor (whether or not pursuant to this Plan) during the preceding calendar quarter, or portion thereof, that this Chapter 11 case remains open.

9.11    <u>Reorganized Debtor's Professional Expenses</u>.  After the Effective Date, the Reorganized Debtor will pay the fees and expenses of its attorneys, accountants, financial consultants and other professional persons, in each case in the ordinary course of business and without the necessity for any Court approval.

9.12    <u>No Retiree Benefits</u>.  The Debtor is not obligated to provide any retiree benefits within the meaning of section 1114(a) of the Bankruptcy Code.  Thus, section 1129(a)(13) of the Bankruptcy Code does not apply to this Plan.

9.13    <u>Closing of the Chapter 11 Case</u>.  As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, it shall seek authority from the Court to close the Chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Chapter 11 case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor or other party in interest to reopen the Chapter 11 case for any matter over which the Court has retained jurisdiction under this Plan.

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

9.14    <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements provided for in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor and the Estate.  The Debtor expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle other Claims and Causes of Action up to and including the Effective Date.

9.15    <u>Withdrawal or Revocation of the Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Estate or any other entity, or to prejudice in any other manner the rights of the Debtor, the Estate, the Committee or any other entity in further proceedings involving the Debtor and specifically shall not modify or affect the rights of any party under any prior orders of the Court.

9.16    <u>Failure of Effective Date</u>.  In the event the Effective Date does not occur by August 1, 2010 (or such later date as shall have been approved by the Court upon application of the Debtor), nothing in this Plan shall be binding on the Debtor, the Estate, the Committee or any other entity, or otherwise be of any force or effect.

9.17    <u>Default</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, in the event that the Reorganized Debtor shall default in the performance of any of its obligations under the Plan and shall not have cured such a default within any

Page 48 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

applicable cure period (or, if no cure period is specified in the Plan or in any instrument issued to or retained by a Creditor under the Plan, then within 30 days after receipt of written notice of default from the Creditor to whom the performance is due), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

9.18    <u>Governing Law</u>.  Except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Oregon without regard to choice of law rules.

9.19    <u>Computation of Time Periods</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.20    <u>Reservation of Rights</u>.  If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Chapter 11 case are and will be reserved in full.  Any concessions or settlement reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 case shall be bound or deemed prejudiced by any such concession or settlement.

9.21    <u>Severability</u>.  In the event that the Court, prior to entry of the Confirmation Order, determines that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid, void or unenforceable, and such provision shall then be applicable as altered or interpreted.  Notwithstanding any

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

**GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

such holding, alteration or interpretation, the remainder of the provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

9.22   Plan Controls.  To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall control.

9.23   Successors and Assigns.  The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, Creditors, Shareholders and all other parties in interest affected thereby and their respective successors, heirs, legal representatives and assigns.

9.24   Exhibits.  All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

9.25   Notices to Reorganized Debtor.  Any notice to the Reorganized Debtor by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) confirmed facsimile transmission, or (iv) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

| If to the Reorganized Debtor: | Legend Homes Corporation<br>12755 SW 69th Avenue, Suite 100<br>Portland, OR  97223<br>Facsimile:  (503) 598-8900<br>Attention:  Diane F. Jarvis, CFO |
|---|---|
| With copy to: | Greene & Markley, P.C.<br>1515 SW Fifth Avenue, Suite 600<br>Portland, OR  97201<br>Facsimile:  (503) 224-8424<br>Attention:  Mr. David A. Foraker |

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd

GREENE & MARKLEY, P.C.<br>1515 S.W. Fifth Avenue, Suite 600<br>Portland, OR 97201<br>Telephone: (503) 295-2668<br>Facsimile: (503) 224-8434

1    Dated: May 12, 2010                    Matrix Development Corporation,
2                                           an Oregon corporation

3

4                                           By   /s/ Jim L. Chapman
                                                Jim L. Chapman, its President
5
     Presented by:
6
         /s/ David A. Foraker
7    David A. Foraker, OSB #812280
     Greene & Markley, P.C.
8    1515 SW Fifth Avenue, Suite 600
     Portland, OR  97201
9    Telephone:  (503) 295-2668
     Facsimile:    (503) 224-8434
10   E-mail: david.foraker@greenemarkley.com
     Attorneys for Debtor
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 51 of 51  DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF
REORGANIZATION, AS FINALLY MODIFIED

\6522\P Plan of Reorganization--SECOND amended 5-3-10 CLEAN.wpd    **GREENE & MARKLEY, P.C.**
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1

## Appendix A

2

### <u>DEFINITIONS</u>

3

4

    <u>Abandoned Property</u> means real property of the Debtor that is abandoned before

the Effective Date by Court order pursuant to section 554(a) of the Bankruptcy Code.

5

The Abandoned Property is the real property described in the Court orders entered on

6

May 21, 2009, June 5, 2009, and May 11, 2010, as Document #1218, Document #1299,

7

and Document #2078, respectively, and generally known as Arlington/Ames in Tigard

8

Oregon; Copper Creek a/k/a Madrid Property in Wilsonville, Oregon; Edgewater on the

9

Tualatin Phases 3 and 4 in King City, Oregon; North Albany Village in Albany, Oregon;

10

The Q Condominiums Phase 2 in Hillsboro, Oregon; Taralon Phases 1 and 2 in Happy

11

12

Valley, Oregon; Victoria Gardens in Tualatin, Oregon (other than lots 1, 2, 9 and 59);

13

Villebois Phase 2 in Wilsonville, Oregon; and Witham Oaks in Corvallis, Oregon.

    <u>Adjusted EBITDA</u> means, for any period, the aggregate net income (or loss) of the

14

Reorganized Debtor and its Subsidiaries for such period, determined on a consolidated

15

16

basis in accordance with GAAP consistently applied, (a) plus the sum of the following

17

amounts to the extent included in the determination of such net income (or loss): (i)

18

interest expense, (ii) income tax expense, (iii) depreciation and amortization expenses,

19

(iv) non-cash losses, and (v) compensation to executive officers (i.e., President, Chief

20

Financial Officer, and Vice-President) that exceeds, in the aggregate, $433,600 during the

21

12-month period ending the first anniversary of the Effective Date, $476,900 during the

22

12-month period ending the second anniversary of the Effective Date, $524,656 during

23

the 12-month period ending the third anniversary of the Effective Date, and $577,121

24

during the 12-month period ending the fourth anniversary of the Effective Date, and (b)

25

minus the sum of the following amounts to the extent included in the determination of

26

such net income (loss): (i) Insider Recoveries, (ii) non-cash income, and (iii) income tax

benefit.

Page 1 - Definitions

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1

2      Administrative Expense Claim means a Claim that is entitled to priority under

3  sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (a) any actual and

4  necessary costs and expenses of administering or preserving the Estate, (b) any actual and

5  necessary costs and expenses of operating the Debtor's business after the Petition Date,

6  (c) any indebtedness or obligation incurred by the Debtor in the ordinary course of

7  business in connection with the conduct of its business after the Petition Date, (d) any

8  allowances of compensation or reimbursement of expenses under sections 330, 331 or

9  503 of the Bankruptcy Code to the extent of the Allowed Amount thereof, whether fixed

10  before or after the Effective Date, and (e) any fees or charges assessed against the Estate

11  under 28 USC § 1930.

12      Allowed Amount means with reference to any Claim (including any

13  Administrative Expense Claim):  (a) if the holder thereof has not filed a proof of claim

14  with the Court within the applicable period of limitation fixed pursuant to Bankruptcy

15  Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor' schedules, as they

16  may from time to time be amended in accordance with Bankruptcy Rule 1009, as not

17  disputed, contingent or unliquidated; or (b) if the holder thereof has filed a proof of claim

18  with the Court within the applicable period of limitation fixed pursuant to Bankruptcy

19  Rule 3003(c)(3): (i) the amount stated in such proof of claim, if no objection to such

20  proof of claim has been interposed within any applicable period of limitation fixed by

21  this Plan or a Final Order, or (ii) such amount as shall be fixed by Final Order or by

22  agreement of the holder thereof and the Debtor (or the Reorganized Debtor, as the case

23  may be), if an objection has been timely interposed; or (c) if with respect to an

24  Administrative Expense Claim that requires Court approval as a precondition to payment,

25

26

Page 2 - Definitions

\6522\P Plan of Reorganization--SECOND amended 5-3HENE & MARKLEY, P.C.
**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

such amount as shall be fixed by Final Order; or (d) if a Claim that is expressly allowed in this Plan, the amount set forth in the Plan.

Allowed Claim means a Claim for which an Allowed Amount has been determined.

Allowed Secured Claim means an Allowed Claim (other than an Administrative Expense Claim) that is secured by a lien, security interest or other charge against or interest in property of the Estate or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined by the Court in accordance with section 506(a)(1) of the Bankruptcy Code or as agreed by the Creditor and the Debtor) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

Allowed Unsecured Claim means an Allowed Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

Amended Loan Documents, as applied to Claims in Class 2, 3, 6, 7 or 11, means, collectively, the replacement promissory note, the amended and restated loan agreement, the amendment to trust deed, and all other documents and agreements, if any, that will govern the respective rights and obligations of the Lender and the Reorganized Debtor with respect to such Claims.  Unless otherwise agreed by the Debtor or the Reorganized Debtor, as the case may be, the Amended Loan Documents shall be in the form prepared by the Debtor.  The form and content of the Amended Loan Documents shall be consistent with the terms of the Plan and otherwise reasonably acceptable to the Debtor and the applicable Lender; provided, however that if the Lender and the Debtor are unable to reach agreement on the form and content of the Amended Loan Documents, any such dispute shall first be referred to The Honorable Elizabeth L. Perris for mediation and, if such mediation is unsuccessful, the dispute shall be submitted to and determined

Page 3 - Definitions

\6522\P Plan of Reorganization--SECOND amended 5-13-10.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

by the Court.

Avoidance Actions means all avoidance or recovery actions of the Debtor or the Estate under sections 542, 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including, without limitation, fraudulent transfer or conveyance laws, whether or not such actions are pending on the Effective Date and whether asserted or unasserted as of the Effective Date.

Ballot means a ballot that is used by a holder of a Claim to accept or reject this Plan.

Bankruptcy Code means title 11 of the United States Code, and any amendments thereto applicable to this Chapter 11 case, as in effect on the Confirmation Date.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure.

Blocked Account, as applied to a Claim in Class 2, 3, 6, 7 or 11, means a deposit account that is maintained and used specially and exclusively for the Lender's cash collateral in accordance with the provisions of the Plan or as provided in the Amended Loan Documents. Unless the Lender maintains the account, the Blocked Account will be subject to a deposit account control agreement among the Reorganized Debtor, the Lender and the depositary bank.

Business Day means any day that is not a Saturday, a Sunday or a day on which banks are required or permitted to be closed in the State of Oregon.

Cash means legal tender of the United States or its equivalent, including negotiable instruments payable on demand.

Causes of Action means any and all actions, causes of action, choses in action, suits, accounts, reckonings, controversies, third-party claims, counterclaims, crossclaims, Avoidance Actions, rights to recovery, rights to legal remedies, rights to equitable remedies, rights to payment, and demands whatsoever, whether known, unknown,

Page 4 - Definitions

reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, at law or in equity or otherwise, which, in each case, arose or accrued in favor of the Debtor (as debtor in possession or otherwise) on or before the Effective Date.

Claim means a claim or right to payment against the Debtor or the Estate or against property of the Estate.

Class means a category of Claims or Equity Interests which are substantially similar to each other, as classified pursuant to the Plan.

Collateral means the property, or interest in property, of the Debtor or the Estate that secures a Claim.

Committee means the Official Committee of Unsecured Creditors of the Debtor, appointed by the United States trustee pursuant to section 1102 of the Bankruptcy Code, as such Committee may be constituted from time to time.

Confirmation Date means the date of entry of the Confirmation Order.

Confirmation Order means the Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

Contingent Claim means a Claim as to which the Debtor's liability on any date of determination is subject to the happening of one or more future events.

Court means the United States District Court for the District of Oregon having jurisdiction over this Chapter 11 case and, to the extent of any reference made pursuant to 28 USC § 157, the United States Bankruptcy Court for the District of Oregon, and any court having competent jurisdiction to hear appeals therefrom.

Creditor means a holder of a Claim.

Cure means the distribution of Cash, or such other property as may be agreed upon by the parties, with respect to the assumption of an executory contract or unexpired lease

Page 5 - Definitions

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

under section 365(b) of the Bankruptcy Code, in an amount equal to all accrued, due and unpaid monetary obligations, without interest, as of the Effective Date, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

Debtor means Matrix Development Corporation, an Oregon corporation. For any period of time after the merger with Legend Homes Corporation, an Oregon corporation, on June 9, 2008, references herein to the Debtor mean the Debtor after giving effect to such merger.  For any period of time after the Petition Date and before the Effective Date, references herein to the Debtor mean the Debtor as debtor in possession under section 1107 of the Bankruptcy Code.

Disallowed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the Allowed Amount thereof.

Disclosure Statement means the disclosure statement for this Plan which is approved by the Court.

Disputed Amount means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount of the Claim which is conceded by the Debtor or the Reorganized Debtor.

Disputed Claim means any Claim for which an Allowed Amount has not yet been determined and with respect to which an objection has been interposed.

Distribution Date means any date on which Cash distributions are to be made pursuant to the Plan to holders of Class 19 Claims.

Edgewater Started Home Waterfall means that the gross proceeds from the sale of a Home in Edgewater Phase 1, 2, or East that is completed or under construction on the Effective Date shall be disbursed in the following manner at the closing: first, to pay all

Page 6 - Definitions

direct transaction costs (including brokerage commissions, escrow fees, title insurance premiums and closing costs), not to exceed in the aggregate seven percent (7%) of the gross sale proceeds and subject to the further limitation that any brokerage commission payable to Legend Real Estate Services Corporation or other affiliate controlled by the Reorganized Debtor shall not exceed three percent (3%) of the gross sale proceeds, and all property taxes and similar governmental impositions prorated for periods prior to the closing; second, to KeyBank, the sum of all costs and expenses incurred by the Debtor in connection with the construction of such Home which were paid from funds in the KeyBank Collateral DIP Accounts; third, to KeyBank, the sum of all advances, if any, outstanding under the KeyBank Revolving Vertical Construction Loan Facility with respect to such Home; fourth, to KeyBank, unless otherwise agreed between the Reorganized Debtor and KeyBank, the amount of $75,000; and fifth, the balance to the Reorganized Debtor.

Effective Date means the first day of the month following the month in which the Confirmation Date falls on which (i) all conditions precedent specified in Section 7.1 of the Plan have been satisfied or waived, and (ii) no stay of the Confirmation Order is in effect; provided, however, that the Effective Date shall occur within 30 days after the Confirmation Date unless a later date is established by the Court on motion of the Debtor or the Committee.

Equity Interest means any capital stock or other ownership interest in the Debtor that is outstanding as of the Effective Date, however denominated and whether or not transferable, and any option, warrant or right to purchase, sell or subscribe for an ownership interest in or other equity security of the Debtor.

Estate means the estate of the Debtor created by section 541 of the Bankruptcy Code, including all Causes of Action.

Face Amount means with reference to any Claim: (a) if the holder thereof has not

Page 7 - Definitions

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

1
2
3
4
5
6
7
8
9
10

filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent or unliquidated; or (b) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount stated in such proof of claim; or (c) if an Administrative Expense Claim for which an application or request for payment is filed within any time as may be fixed by the Court, the amount to which the applicant would be entitled if the application or request were to be granted in full.

Fair Value, as applied to any Retained Project, means the value (as set forth in the Plan, or if no value is specified, as determined by the Court in accordance with section 506(a)(1) of the Bankruptcy Code or as agreed by the Lender and the Debtor) of the Lender's interests in such Retained Project and in the cash collateral thereof.

Final Order means a judgment, order or other decree issued and entered by the Court as to which (i) any appeal that has been taken has been finally determined or dismissed and the time to take any further appeal, or to seek certiorari or further hearing, has expired or been waived in writing, or (ii) the time to take an appeal has expired and no appeal has been timely filed.

GAAP means generally accepted accounting principles in the United States of America, as in effect from time to time and as set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and in the statements and pronouncements of the Financial Accounting Standards Board, which are applicable to the circumstances as of the date of determination.

Home means a residential dwelling unit (whether a house, townhome or condominium unit) that is constructed by the Debtor or by the Reorganized Debtor.

Page 8 - Definitions

\6522\P Plan of Reorganization--SECOND amended 5-13-10.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

1
2
3
4
5

Insider Causes of Action means all Causes of Action against Kara Oringdulph Hale, George Hale and Oringdulph Hale, LLC, or any of them, and includes all rights to object to and defend against Claim 183 filed by Kara Oringdulph Hale in this Chapter 11 case.

6
7
8
9

Insider Recoveries means all Cash proceeds collected on account of the Insider Causes of Action, in each case, after deduction of all costs and expenses (including court costs, attorneys' fees and other professional expenses) incurred by the Committee in connection therewith.

10
11
12
13
14
15
16
17

KeyBank Revolving Vertical Construction Loan Facility means the revolving credit facility to be made available to the Reorganized Debtor by KeyBank, N.A. on the Effective Date for the purposes of, among other things, enabling the Reorganized Debtor to fund obligations incurred by it in the ordinary course of business in connection with the construction of new Homes and other improvements on lots in Edgewater Phases 1, 2 and East.  The amount of the credit facility shall be no less than $3,900,000 and the other terms and conditions of the credit facility shall be acceptable to the Debtor and KeyBank, N.A.

18
19

Lender means a holder of an Allowed Claim in Class 2, 3, 6, 7 or 11, including any successor to or assignee of the original holder.

20
21
22
23

Lender Interest Rate means the rate of interest that will accrue on the Allowed Claims in Classes 2, 3, 6 and 7. Unless a different rate is specified in the Amended Loan Documents, the Lender Interest Rate shall be a fixed rate of five and one-half percent (5½%) per annum.

24
25
26

Lot Release Amount, as applied to any Retained Project, means the amount that the Reorganized Debtor is required to pay the Lender as a condition precedent to the release of the trust deed lien that secures the Lender's Claim on a lot in the Retained Project and on all improvements on such lot.

Page 9 - Definitions

**GREENE & MARKLEY, P.C.**
**1515 S.W. Fifth Avenue, Suite 600**
**Portland, OR 97201**
**Telephone: (503) 295-2668**
**Facsimile: (503) 224-8434**

<u>New Common Stock</u> means the common stock of the Reorganized Debtor which is to be issued on the Effective Date pursuant to the Plan.  The New Common Stock shall be subject to restrictions on transfer to the extent necessary to avoid any adverse federal income tax consequences resulting from an ownership change (as defined in 26 USC §382) in the Reorganized Debtor within two years after the Effective Date.

<u>Permitted Liens</u> means (i) liens that secure claims of governmental units for ad valorem property taxes, assessments, levies and similar impositions which, in each case, is not delinquent or, if delinquent, is being contested in good faith by appropriate action or proceedings, (ii) liens that secure Allowed Class 4 Claims, (iii) statutory liens that arise in the ordinary course of business and not in connection with the borrowing of money, including workers', mechanics', suppliers', carriers', or similar liens that secure, in each case, a claim that is not overdue or, if overdue, is being contested in good faith by appropriate action or proceedings, (iv) any attachment or judgment lien, unless the judgment it secures is not, within 60 days after the entry thereof, discharged or execution thereof stayed pending appeal, or is not discharged within 60 days after the expiration of any such stay, (v) zoning restrictions, easements, licenses, or other restrictions on the use of real property or other minor irregularities in title thereto, so long as the same do not materially impair the use, value or marketability of such real property, and (vi) any other lien that is permitted to exist by the applicable Lender in writing.

<u>Petition Date</u> means June 10, 2008.

<u>Plan</u> means this Chapter 11 plan and all exhibits and schedules hereto, which are incorporated by reference, together with any amendments or modifications which may be filed from time to time.

<u>Priority Claim</u> means an Allowed Unsecured Claim that is entitled to priority under section 507(a) of the Bankruptcy Code and is not an Administrative Expense Claim.

Page 10 - Definitions

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

Priority Tax Claim means an Allowed Unsecured Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

Pro Rata as at any date of determination means, with respect to any Class 19 Claim, the same proportion that the Allowed Amount of such Claim bears to the sum of (i) the Allowed Amounts of all Claims in the same Class, and (ii) the Face Amounts of all Disputed Claims and Contingent Claims in the same Class, as reduced from time to time as and to the extent that the Disallowed Amounts of such Claims are determined.

Reorganized Debtor means the Debtor on and after the Effective Date.

Reserve Fund as at any date of determination means the aggregate of (i) Unclaimed Property, (ii) the Cash reserved for the benefit of holders of Disputed Claims and of Contingent Claims, and (iii) Cash held under Section 5.6 of the Plan concerning disputes as to the identity of entities entitled to receive distributions under the Plan.

Retained Project means any real estate project, fee title to which is vested in the Debtor on the Effective Date, that is not Abandoned Property.

Shareholder means a holder of an outstanding Equity Interest.

Subsidiary means (a) any corporation or limited liability company of which an aggregate of 50 percent or more of the outstanding equity securities or membership interests are directly or indirectly owned, controlled or held with power to vote by the Reorganized Debtor, or (b) any partnership in which the Reorganized Debtor, directly or indirectly, has an interest (whether in the form of voting, participation in profits or capital contribution) of 50 percent or more.

Unclaimed Property as at any date of determination means the Cash, exclusive of any interest earned thereon, held by or for the Reorganized Debtor that is unclaimed by a Creditor following a distribution made pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed and checks that were not mailed or

Page 11 - Definitions

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434

delivered because of the absence of a proper address to which to mail or deliver such property).

Wachovia means Wachovia Financial Services, Inc., a North Carolina corporation.

Wachovia Revolving Vertical Construction Loan Facility means the revolving credit facility to be made available to the Reorganized Debtor by Wachovia on the Effective Date for the purposes of, among other things, enabling the Reorganized Debtor to fund obligations incurred by it in the ordinary course of business in connection with the construction of new Homes and other improvements on lots in Villebois Phase 1. The amount of the credit facility shall be no less than $4,000,000 and the other terms and conditions of the credit facility shall be acceptable to the Debtor and Wachovia.

\6522\P Plan of Reorganization--SECOND amended 5-13-10.wpd

GREENE & MARKLEY, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 295-2668
Facsimile: (503) 224-8434